IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY D. STARLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-cv-555-JTA |
| | ) | |
| KILOLO KIJAKAZI, | ) | (WO) |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Kimberly D. Starling ("Starling"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[2] The Commissioner denied Starling's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). (R. 10-22.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 13, 14.)

Based upon a review of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be REVERSED and this matter be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Under Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, for Andrew Saul, the former Commissioner.

[2] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

# I.   PROCEDURAL HISTORY AND FACTS

Starling was born on October 1, 1967 and was 51 years old at the time of the administrative hearing held on October 19, 2018.  (R. 56.)[3]  She attended school until the ninth grade and previously worked as a forklift operator, warehouse worker, delivery driver, counter parts clerk, cable installer, and drywall installer.  (R. 57.)  Starling alleges a disability onset date of March 13, 2013, due to back injuries, a torn rotator cuff, and depression.  (R. 270, 280.)  Starling later amended her onset date to October 1, 2017.  (R. 51-54.)

Starling applied for a period of disability, DIB, and SSI on September 24, 2013, September 25, 2013, and October 3, 2013, respectively, under Title II (42 U.S.C. §§ 401, *et seq.*) and Title XVI of the Social Security Act (42 U.S.C. §§ 1389, *et seq.*) ("the Act").  (R. 270, 280, 288.)  The applications were denied on October 17, 2013 (R. 154-62), and Starling requested an administrative hearing (R. 164-65).  Following Starling's first administrative hearing, which occurred on April 27, 2015 (R. 76-98), her initial applications were denied by the Administrative Law Judge ("ALJ") (R. 123-39).  Subsequently, the Appeals Council vacated the hearing decision and remanded the matter to the ALJ for a supplemental administrative hearing.  (R. 144-45.)  Following the supplemental administrative hearing held on October 19, 2018 (R. 48-74), the ALJ denied Starling's request for benefits in a decision dated January 17, 2019 (R. 10-22).  The Appeals Council denied Starling's request for review on June 13, 2019, making the Commissioner's

---

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (Doc. No. 12.)

decision final. (R. 1-4.)  On August 2, 2019, Starling filed the instant action appealing the decision of the Commissioner.  (Doc. No. 1.)

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).  Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Despite this deferential [substantial evidence] standard, it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.  Still, the Commissioner's conclusions of law are not entitled to the same deference

as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that she is disabled.  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.[4]  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by the ALJ.  *See Washington v. Comm'r of Soc. Sec*., 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is a work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. §

---

[4] Although DIB and SSI are separate programs, the law and regulations governing claims under the respective programs are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining disability.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id*.  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis.  At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  The ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c).  Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Starling has not engaged in substantial gainful activity since the amended alleged onset

date of disability, October 1, 2017, and she suffers from the following severe impairments that significantly limit her ability to perform basic work activities: "degenerative disc disease of the lumbar spine, probable rotator cuff disease, essential hypertension and obesity[.]" (R. 13.)  The ALJ concluded that Starling's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 14.)

After consideration of the record, the ALJ determined that Starling retains the RFC to perform less than the full range of light work[5] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (R. 15.)  The ALJ found the following workplace limitations applicable to Starling:

> [She] has the residual functional capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally.  She can stand and/or walk with normal breaks for a total of about 6 hours out of an 8-hour workday.  [She] can sit with normal breaks for a total of about 6 hours out of an 8-hour workday and do unlimited pushing and/or pulling, including the operation of hand and/or foot controls.  [She] can occasionally climb ramps and stairs, balance, and stoop.  She can never climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to extreme heat, extreme cold, and vibration.  [She] must avoid all exposure to hazardous machinery and unprotected heights.

(R. 15.)

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . ."  20 C.F.R. § 404.1567(b).

Following the testimony of the Vocational Expert ("VE"), the ALJ determined that Starling is capable of performing her past work as a parts sales person. (R. 21-22.) The ALJ determined that with Starling's RFC, as well as the physical and mental demands of her work, Starling can perform it as it is performed in the national economy. (R. 21-22.) The ALJ concluded that Starling has not been under a disability from March 13, 2013,[6] through January 17, 2019, the date of the ALJ's decision. (R. 22.)

## V.    DISCUSSION

Starling presents two arguments on appeal. First, she argues the ALJ failed to properly weigh the medical opinion evidence of Dr. Dennis Harden ("Dr. Harden") and Dr. Alphonza Vester ("Dr. Vester"), and thus failed to properly determine her RFC. (Doc. No. 10 at 2-11.) Second, Starling argues the ALJ failed to properly evaluate her subjective statements of pain. (*Id.* at 11-15.)

The Court evaluates each of Starling's arguments below.

A.  Weighing the Medical Opinions of Drs. Harden and Vester

Starling asserts that remand is warranted because the ALJ committed legal error by not giving the medical opinion of Dr. Harden the requisite weight as her primary treating physician. (*Id.* at 3.) She also asserts the ALJ improperly rejected the opinion of Dr. Vester for "only examin[ing her] on one occasion" because "a medical opinion may not be discounted solely or largely because it is based on a single examination." (*Id.* at 8-9.) The

---

[6] The Court notes that the ALJ appears to have inadvertently used March 13, 2013 as Starling's alleged disability onset date in this part of the hearing decision, not the amended onset date of October 1, 2017. (R. 22.)

Commissioner responds generally that the ALJ properly evaluated the opinions from the treating and examining physicians.[7]  (Doc. No. 11 at 6.)

An ALJ must articulate the weight given to different medical opinions in the record and her supporting reasons.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The Commissioner's regulations require "controlling weight" be given to medical opinions from treating physicians: "[i]f [the Commissioner] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2); *see* 20 C.F.R. § 416.927(c)(2).  In determining if this weight applies, the Commissioner must consider the following factors:  the length of the treatment relationship between the physician and the claimant and frequency of examination; the nature and extent of the treatment relationship; how the physician's opinion is supported by the medical evidence; the consistency of their opinion with the record; whether the physician is a specialist; and any other factors supporting or contradicting the medical opinion.  *See* 20 C.F.R. § 404.1527(c)(2)-(6); 20 C.F.R. § 416.927(c)(2)-(6).

A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford,* 363 F.3d at 1159 (quoting *Lewis*,

---

[7] The Commissioner argues the ALJ "provided adequate reasons for according some weight to the opinion from Dr. Vester[,]" but does not provide any argument in regard to the opinion from Dr. Harden.  (Doc. No. 11 at 6-7.)

125 F.3d at 1440).  "Good cause" to discount a treating physician's opinion exists where the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips*, 357 F.3d at 1241 (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) ("good cause" existed where the opinion was contradicted by other notes in the physician's own record).  If the ALJ does not clearly articulate the reasons for giving less weight to the opinion of a treating physician, the ALJ has committed a reversible error. *Lewis*, 125 F.3d at 1440.

Moreover, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (although a claimant's physician may state he is disabled or unable to work, "the agency will nevertheless determine disability based upon the medical findings and other evidence"); *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) ("[A]lthough the Commissioner will consider opinions from medical sources on issues such as the RFC and the application of vocational factors, the final responsibility for deciding those issues is reserved to the Commissioner.").  In short, "the task of determining a claimant's ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).  However, the court is interested in the

physicians' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of the condition." *Lewis*, 125 F.3d at 1440.

Here, the ALJ discounted the disability opinion[8] of Dr. Harden on the State of Alabama Department of Human Resources Food Assistance Program form (R. 19, 604) because "it appear[ed] to be a one-time only encounter" (R. 21).  This was reversible error. Though the disability opinion on the form at issue by Dr. Harden is not a "medical opinion" and therefore the ALJ is not required to give "any special weight" to the opinion, the ALJ was required to consider the actual medical opinions and treatment notes of Dr. Harden which are in the medical record.  A review of the record establishes that Starling and Dr. Harden have a treatment relationship beginning on September 19, 2011 and extending generally until May 2016 when Dr. Harden opined on Starling's disability status.  (R. 484-509, 604.)  After Starling's first office visit on September 19, 2011, she continued to see Dr. Harden through July 2013 with eleven visits documented in the record.  (R. 484-509.) Of these visits, four of them directly relate to issues regarding her back pain, Starling's primary impairment.  (R. 484-85, 488-89, 506-07, 508-09.)  In addition, when Starling was referred to specialists for treatment outside the scope of treatment provided by Dr. Harden, his name is listed on the intake forms as her primary care physician.  (R. 435, 438, 442.) In an April 19, 2013 visit to Dr. Thomas Bernard ("Dr. Bernard"), it is noted that he "will

---

[8] On the Request for Medical Information Work Requirements form for the State of Alabama Department of Human Resources Food Assistance Program, Dr. Harden marked that "[b]ased on [Starling's] current medical condition, [he] believed that she is mentally and physically" unable to work, that her "back pain" was the medical condition which prevented her "from being able to work[,]" and the "date of onset for the [back pain is] March 2013."  (R. 604.)  The form is dated May 16, 2016.  (*Id.*)

speak with her primary care physician Dr. Dennis Harden." (R. 437.) Further, in 2014 Starling was referred to Phenix City Pain Management by Dr. Harden for her shoulder and back pain. (R. 527-75.)

Given the medical evidence in the record, the Court finds that Dr. Harden was a treating physician of Starling. Dr. Harden has a history as Starling's primary care physician with records spanning years, as well as referrals to specialists for further testing, and communication between him and the specialists regarding the ongoing care of Starling. The conclusion by the ALJ to reject Dr. Harden's opinion due to their relationship merely being "a one-time only encounter" is clearly erroneous. Since the ALJ did not mention the evaluations by Dr. Harden of Starling's "condition and the medical consequences thereof," *Lewis*, 125 F.3d at 1440, or clearly articulate grounds for rejecting his medical opinion, the Court cannot find that substantial evidence supports the ALJ's conclusion. *See Winschel*, 631 F.3d at 1179 (reversing decision of Commissioner and remanding case because "[t]he ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight[,]' . . . the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered"). Furthermore, given Dr. Harden's evidenced status as a treating physician, there must be "good cause" to discredit his medical opinion. *Lewis*, 125 F.3d at 1440. Because the ALJ failed to properly determine Dr. Harden's status as a treating physician and failed to mention his medical opinion, she thus failed to properly discredit his medical opinion. As a result, the case is due to be remanded under 42 U.S.C. § 405(g) for the ALJ

to explicitly consider and explain the weight accorded to the medical opinion of Dr. Harden in determining Starling's RFC.

As to Starling's argument that a medical opinion may not be discounted solely or largely because it is based on a single examination, that argument is unavailing. Dr. Vester's opinion is not that of a treating physician, and as such the Commissioner owes no deference to that opinion. *See Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)) ("The ALJ owes no deference to the opinion of a physician who conducted a single examination: as such a physician is not a treating physician."). Accordingly, the Court finds no reversible error in relation to the ALJ's consideration of Dr. Vester's medical opinion and the ALJ's stated reasons for crediting a portion of his medical opinions.

B.  The ALJ's Evaluation of Starling's Subjective Testimony of Pain

Starling asserts that the ALJ failed to properly evaluate her subjective testimony of pain. (Doc. No. 10 at 11.) Starling contends "the ALJ erred by finding [her] reported symptoms and limitations [were] not consistent with her conservative course of treatment." (*Id*. at 13.) Starling also contends the ALJ erred "by concluding [her] use of a cane is not warranted because it was not prescribed or deemed medically necessary in any of the medical records." (*Id*. at 14.) The Commissioner responds that the ALJ's evaluation of Starling's pain is supported by substantial evidence. (Doc. No. 11 at 7.)

"In order to establish a disability based on testimony of pain and other symptoms, [Starling] must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of

the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted).   A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995).

"If an ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.  Failure to articulate adequate reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Yet, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (internal citations omitted).  "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [a claimant's] medical condition as a whole.' " *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

Starling testified that her pain is getting worse, and she is unable to get relief.  (R. 63.)  In the hearing before the ALJ on April 27, 2015, Starling testified that her back pain is like "taking a knife and jabbing it into your spine and turning the jagged edges and spurs on it." (R. 84.)  Starling also testified that she experiences the back pain every day, all day and all night, but that "[i]t comes [and] . . . goes." (*Id*.)  In the subsequent hearing on October 19, 2018, Starling testified that her primary source of pain is in her lower back and that the pain shoots down her legs, causing her legs to go numb.  (R. 59.)  She testified that

she suffers back pain when she walks, sits, or lies down.  (R. 63.)  Though, she also testified

that lying in her recliner "eases" her pain "because it takes the pressure off of [her] spine."

(*Id.*)  She further testified that she "can't straighten . . . out" her right arm, she is "right-

handed[,]" and Dr. Crosby at Mercy Medical told her she "needed to get" a cane.[9]  (R. 58-

60.)

     The ALJ found that Starling's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, [Starling's] statements

concerning the intensity, persistence, and limiting effects of these symptoms are not

consistent with [sic] medical evidence and other evidence in the record."  (R. 16.)  The ALJ

did not explicitly state that she was discrediting Starling's statements, but she pointed to

several inconsistencies between the pain Starling alleged and the evidence of record.  For

example, the ALJ stated that Starling's "statements about the intensity, persistence, and

limiting effect of  . . . [her] symptoms . . . are inconsistent because the evidence of record

shows that on March 21, 2013, [Dr. Bernard] at [t]he Hughston Clinic saw [Starling] for

complaints of back pain for a year that was very minimal with standing, sitting and

walking."  (R. 16.)  The ALJ discusses the treatment of Starling by Dr. Bernard, Dr. Antif

Iqbal ("Dr. Iqbal") from the St. Francis Spine Center, Dr. Bill Berryman from the Phenix

City Pain Management, and other medical sources.  (R. 16-19.)  The ALJ then concluded

> [t]he medical evidence of record arguably suggests that [Starling] is not as
> limited as she has alleged.  [Starling] has generally not received the type of
> medical treatment one would expect for a totally disabled individual.  [She]

[9] Starling's attorney conceded in the supplemental administrative hearing that the medical records "noted" Starling's use of a cane but he "did not see where they had recommended she get it."  (R. 61.)  The ALJ concurred, stating "Neither did I."  (*Id.*)

14

presented to the hearing using an assistive device, however, there is nothing in the objective medical evidence of record that suggests that the device was either prescribed or deemed to be medically necessary.

As to [Starling's] lumbar degenerative disc disease and probable rotator cuff disease, the records show no evidence of surgery for the back or shoulder in [sic] medical evidence of record.  There is no evidence that [Starling] is a surgical candidate for either of these alleged impairments.  The records do show [Starling] has taken prescribed medications for her impairments as well as has had epidural steroid injections for her back. . . .

(R. 20.)

The Court finds that the objective medical evidence supports the ALJ's conclusion. Starling's visits to Dr. Bernard began on March 21, 2013 and end in April 2013.  (R. 435-449.)  On her first visit, Starling informed Dr. Bernard that she "had pain in her back for at least a year[;] [s]he suddenly got up out of a chair a year ago and began having back pain . . . ."  (R. 444.)  Dr. Bernard determined Starling to have normal curvature of her back.  (R. 445.)  Dr. Bernard was also unable to find herniation of the disc, nor any "significant findings."  (R. 437.)  Lastly, there was "no abnormal uptake in the lumbar spine" following a full body scan conducted on April 23, 2013.  (R. 446.)  Dr. Bernard also opined on two separate occasions, that Starling's pain reports appear to be "out of proportion with her physical findings and imaging studies."  (R. 437, 440.)  Dr. Bernard noted that "[he'll] recommend physical therapy intervention over the next several days . . . [i]f symptoms persist beyond this, her primary care doctor might take a look at her and make sure that some other internal visceral problem causing [sic] this degree of pain."  (R. 440.)

In May 2013, Starling was examined by Dr. Iqbal for her back pain.  (R. 467.)  Dr. Iqbal noted that Starling was "being seen for an initial evaluation for acute lower back pain

[that] started on March 20, 2013 without any incident or trauma." (R.467.)  An MRI on Starling's lumbar spine showed mild lumbar degenerative disc disease. (R. 469.)  Dr. Iqbal advised Starling to undergo physical therapy after steroid injections.  (R. 469.)  The subsequent treatment notes from Dr. Iqbal reveal that Starling reported no relief from the series of injections she underwent for her back pain and she complained of "increased low back pain." (R. 466.)  Starling also advised Dr. Iqbal that physical therapy increased her pain. (R. 466.)  On July 3, 2013, Dr. Iqbal discussed completing a surgical evaluation for Starling "as none of [the] previous interventions have proved effective" and noted that he would see her on an as needed basis.  (R. 466.)  Dr. Iqbal noted that Starling was "comfortable with that plan and denie[d] further concerns." (*Id.*)  No further examinations or records from Dr. Iqbal are in the record.

On July 17, 2013, Starling received treatment at the Columbus Neurologic Institute for back pain. (R. 510, 512.)  The treatment notes indicate that the pain "[b]egan [in] 2010 after falling down stairs at home [and] sustaining low back fractures (nonsurgical)." (R. 512.)  The notes further indicate that the pain is "aching, dully, sharp, and stabbing[;] . . . [t]he usual pain level is 10 (scale of 1-10)[;] [f]unctional impairment is moderate – when present it interferes only with some daily activities[;] [and] [t]he pain interferes with sleep regularly." (R. 512.)  The notes provide that Starling had "low back pain bilaterally – severe" upon examination of her spine, and the medical plan was for her to bring a copy of her March 2013 MRI to a follow up appointment with "recommendations to follow after review of imaging." (R. 513.)

Upon reviewing the objective medical evidence in the record, the Court concludes that substantial evidence exists to support the ALJ's conclusion regarding Starling's subjective complaints of pain.  This conclusion is based upon the absence of objective medical evidence supporting the extent of Starling's complaints of pain and the non-surgical treatment for her pain employed by her treating physicians.  In the Eleventh Circuit, "ALJs are permitted to consider the type of treatment a claimant received in assessing the credibility of [her] subjective complaints."  *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (claimant's statement that pain was reduced by medication indicates conservative treatment); *see also Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 869 (11th Cir. 2019) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) to support holding that treatment is a relevant consideration in the Commissioner's assessment of pain under 20 C.F.R. § 404.1529(c)(3)(v)).  Further, the ALJ sufficiently contrasted Starling's testimony with treating records which indicated that her pain was not debilitating,[10] and it is apparent to this Court that the ALJ considered Starling's medical condition as a whole in discounting her testimony of disabling pain.  *Dyer*, 395 F.3d at 1210.  Therefore, the Court finds that the ALJ's determination that Starling's testimony of disabling pain was not credible is supported by substantial evidence

---

[10] The Court pretermits discussion of Starling's contention that the ALJ "erred by concluding that [her] use of a cane is not warranted."  (*See* Doc. No. 10 at 14.)  Starling's contention is a misstatement of the ALJ's notation that "nothing in the objective medical evidence of record . . . suggests that the device was either prescribed or deemed to be medically necessary."  (R. 20.) Moreover, Starling points to no evidence in the medical record which establishes that the notation is erroneous.

and is in accordance with the Eleventh Circuit's pain standard.  The Court finds no reversible error on this issue.

## VI.    CONCLUSION

For the foregoing reasons, the Court finds that the decision of the Commissioner is not supported by the proper legal standards.  Therefore, it is hereby

ORDERED that the decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is REMANDED for further proceedings consistent with this opinion.

A separate judgment will be issued.

DONE this 27th day of September, 2021.

_____

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE